84

(C.D. 2069)

WITKOWSKI NEW YORK AGENCY, INC.
J. J. GAVIN & CO., INC. } *v.* UNITED STATES

United States Customs Court, Second Division

(Decided February 25, 1959)

*Barnes, Richardson & Colburn* (*E. Thomas Honey* of counsel) for the plaintiffs.
*George Cochran Doub*, Assistant Attorney General (*Henry J. O'Neill*, trial attorney); for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge: An importation of socket adapters for camera flashguns was classified by the collector of customs as articles in chief value of base metal, and duty was imposed thereon at the rate of 22½ per centum ad valorem, as provided in paragraph 397 of the Tariff Act of 1930 (19 U.S.C. § 1001, par. 397), as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802.

Plaintiffs rely upon the claim in their protest that said merchandise is properly classifiable as parts of articles having as an essential feature an electrical element or device, dutiable at the rate of 13¾ per centum ad valorem in paragraph 353 of said act (19 U.S.C. § 1001, par. 353), as modified by the Torquay protocol to the general agreement, 86 Treas. Dec. 121, T.D. 52739. Other claims in the protest are not pressed and are deemed to have been abandoned.

The pertinent text of the competing statutes is here set forth:
Paragraph 397, as modified, *supra*:

Articles or wares not specially provided for, whether partly or wholly manu-
factured:
> \*     \*     \*     \*     \*     \*     \*
>> Composed wholly or in chief value of iron, steel, lead,
>> copper, brass, nickel, pewter, zinc, aluminum, or
>> other metal (not including platinum, gold, or silver),
>> but not plated with platinum, gold, or silver, or
>> colored with gold lacquer:
>>> Woven wire fencing and woven wire net-
>>> ting, \* \* \*
> \*     \*     \*     \*     \*     \*     \*
>>> Other (except slide fasteners and parts thereof)\_\_\_ 22½% ad val.

Paragraph 353, as modified, *supra*:

Articles having as an essential feature an electrical element or
device, such as electric motors, fans, locomotives, portable
tools, furnaces, heaters, ovens, ranges, washing machines,
refrigerators, and signs, finished or unfinished, wholly or in
chief value of metal, and not specially provided for:
> Batteries \* \* \*
> \*     \*     \*     \*     \*     \*     \*
> Other \* \* \*_____ 13¾% ad val.

Parts, finished or unfinished, wholly or in chief value of metal,
not specially provided for, of articles provided for in any
item 353 of this Part (not including X-ray tubes or parts
thereof) _____ The same rate
of duty as
the articles
of which they
are parts

The merchandise is represented by two samples marked exhibits
1 and 2.

Illustrative exhibits 3 and 4 were introduced to identify an Edison
base bulb flashgun and a flashgun bayonet base bulb, respectively.

Walter Voss, the only witness in the case, was called on behalf of
plaintiffs. He testified, in substance, that he was president of the
Voss Photo Corp. engaged in the importation and distribution of
photographic merchandise with 15 years' experience in general ad-
ministration and the purchase of merchandise. He was familiar
with the use of articles like exhibits 1 and 2 as adapters in old-type
flashguns only "which used to have the Edison base," said flashguns
being represented by illustrative exhibit 3.

It was agreed by adversary counsel that the merchandise repre-
sented by illustrative exhibit 3 is "an article having as an essential
feature an electrical element and device and that merchandise similar
in all material respects is classified under the provisions of Paragraph

353 as an article having as an essential feature an electrical element or device."

The question for determination therefore, is whether the socket adapters, represented by exhibits 1 and 2, are, in contemplation of law, parts of articles having as an essential feature an electrical element or device.

Voss stated that the flashgun in evidence (exhibit 3) contains a complete electrical circuit. There is a cable which connects to the camera with which it is used, a base and two 1½-volt batteries, a container which holds the flashbulbs, and an attachment to the camera. The batteries are connected directly to the bulb and by means of a wire to the camera outlet. When the shutter of the camera is tripped, it completes the circuit and causes the flashbulb to go off. This type of flashgun may be used with any camera which is synchronized for use with a flashgun.

Exhibit 3 was originally designed to be used with a flashbulb that had an Edison base similar to a lamp socket and continues to be so used, to a very negligible extent, by professional photographers. The size and weight of such bulbs proved inconvenient to photographers to carry in quantity, and when manufacturers were able to produce a smaller size bulb with the same strength or power, purchasers started to buy the smaller type bulbs. The old-type flashbulb has become practically obsolete, and to convert a flashgun with an Edison base into one with a bayonet base so that the modern-type flashbulb can be used, it is necessary to use adapters, such as exhibits 1 and 2. The witness Voss was positive in his view that exhibits 1 and 2 had no other use than with flashguns, represented by exhibit 3, and are necessary and essential to the efficient operation of said articles. When the manufacture of such flashguns was discontinued about 3 or 4 years ago, socket adapters were designed and produced to enable the American manufacturers to market the stock of old-style flashguns which they had on hand. The adapters are now generally sold as replacement parts and, when so used, they complete the electrical circuit in the flashgun.

It is fairly established by the record that, at the present time, Edison base flashguns are substantially wholly used with socket adapters, represented by exhibits 1 and 2.

In arriving at a determination of the issue here presented, reference is made to the case of *United States* v. *Antonio Pompeo*, 43 C.C.P.A. (Customs) 9, C.A.D. 602, wherein the appellate court affirmed the court below in holding that superchargers designed specifically for use on automobile engines were properly classifiable for duty as parts of automobiles within the appropriate tariff provision therefor. In the course of its opinion, it was stated:

The court properly took judicial notice of the fact that numerous innovations have come into use in the automotive field in recent years, such as power steering, automatic transmissions, and power brakes, and felt that each improvement has created what is undoubtedly a new "part" of an automobile, even though not all cars are equipped with such innovations. * * *

It was further stated by the appellate court that:

* * * where an article at time of importation is dedicated to a specific use, the question of whether the article is a part must be determined from the nature of the article as it is applied to that use. * * *

We are satisfied from the record before us that the imported socket adapters at the time of importation were dedicated to a specific use and are necessary and essential to the efficient functioning of the old-type flashguns employing the present-day bayonet base bulb with which they are used.

We find and hold that the subject merchandise should properly be classified as parts of articles having as an essential feature an electrical element or device in paragraph 353, as modified, *supra*, and subject to duty at the rate of 13¾ per centum ad valorem, as claimed by plaintiffs. All other claims are overruled.

Judgment will be entered accordingly.